**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____

**JAMES McCOURT and**                    :
**MABEL McCOURT,**                         :
                                                          :
       *Plaintiffs,*                      :     **Civil Action No. 14-221**
                                                          :
**v.**                                                   :     **OPINION**
                                                          :
**A.O. SMITH WATER PRODUCTS**      :
**CO., et al.,**                                    :
                                                          :
       *Defendants*.                    :
_____ :

**ARLEO**, **U**NITED **S**TATES **D**ISTRICT **J**UDGE.

Before this Court is the motion of Defendant Raytheon Company ("Defendant") to dismiss Plaintiffs James McCourt and Mabel McCourt's ("Plaintiffs") complaint for lack of personal jurisdiction and failure to state a claim [Dkt. No. 116]. For the reasons set forth herein, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of Mr. McCourt's alleged exposure to asbestos. Sec. Am. Compl., Dkt. No. 113. Mr. Court, who was a Florida resident, does not allege he was exposed to any of Defendant's asbestos-containing products in New Jersey. See id. Rather, the Second Amended Complaint asserts the Court may exercise jurisdiction over Defendant because it is "doing business in New Jersey." Id. ¶ 3.

Defendant is a Delaware Corporation with its principal place of business in Massachusetts. Abbott Aff. ¶ 4, Dkt. No. 60. Defendant has registered with the State to transact business in New

Jersey and has designated the Corporation Trust Company of West Trenton, NJ as its registered agent.  Pl. Opp'n Br., Ex. I.  The Complaint in this case was not served on this agent, but instead on Defendant by way of certified mail in Massachusetts.  Abbott Aff. ¶ 4, Dkt. No. 134-1.

Defendant does not maintain any bank accounts in the State and does not own any real property in the State, but leases two office spaces in New Jersey.[1]  Abbott Aff. ¶ 3, Dkt. No. 60.  A total of thirty employees, out of the company's approximately 63,000 employees, work in these locations.[2]  Id.  Defendant's employees neither enter into contracts nor make any sales at either facility.  Id.  Instead, at one facility that employs 28 individuals, Defendant performs software development and testing for a limited number of customers.  Id.  Two persons are employed at the other facility, which performs limited support functions for certain customers.  Id.  In the past five years, Defendant has not initiated any legal proceedings in New Jersey.  Id.

According to a 2006 news article, in or around 2006, Defendant entered into a two-year, $100,000,000 contract with PATH to provide airport security systems at airports in both New York and New Jersey.  See Pl. Opp'n Br., Ex. M.  It is unclear what the contract involved in New Jersey and what percentage of the contract's revenues were attributable to the New Jersey locations Defendant was to service.  In any event, Plaintiff has offered no evidence suggested the contract was extended past 2008.  This contract represented a small percentage of Defendant's income

---

[1] Defendant had, until 2011, also leased a third office space in the State.

[2] Plaintiff asserts that Defendant had recently posted a job advertisement for a position in New Jersey.  Assuming the position was filled, Defendant's total employees in the State would increase to 31 out of 63,000.

Additionally, Plaintiff has provided the Court with a news article from 1998, which represents that Defendant had stated, in 1996, it would relocate 1,000 workers from Pennsylvania to New Jersey.  This article's subject, however, was Defendant's need to reduce its workforce and Plaintiff has presented no evidence that any of these 1,000 employees worked for Defendant in New Jersey during the relevant period.

during that time.  See Pl. Opp'n Br., Ex. L (stating Defendant's 2005 sales totaled $21,900,000,000); see also Def. Reply Br. at 3, n.3 (listing Defendant's 2013 total sales at $23,700,000,000).

## II. Discussion

### A. Applicable Law

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation.  Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  Rather, the plaintiff must "present[] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Id. at 1223 (internal quotations and citations omitted). Once the plaintiff meets this burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted).

In general, a federal court sitting in diversity must engage in a two-step inquiry to determine whether it may properly exercise personal jurisdiction: (1) the court must determine whether the relevant state long-arm statute permits the exercise of jurisdiction; and (2) if it does, the court must satisfy itself that the exercise of jurisdiction comports with the Due Process Clause of the Constitution.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998).  Because New Jersey's long-arm statute extends the state's jurisdictional reach as far as the Constitution permits, this Court need only consider the propriety of exercising personal jurisdiction under the federal

constitutional standard.  Id. at 259; see also Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 n.5 (3d

Cir. 1990) (stating that "New Jersey courts look to federal law for interpretation of the limits on in

personam jurisdiction").

Here, Plaintiff asserts only general jurisdiction over Defendant.  General jurisdiction may

be invoked even when the Plaintiff's claim does not "arise out of or is unrelated to the defendant's

contacts with the forum."  Carteret Sav. Bank, FA, 954 F.2d at 149 (quoting Dollar Sav. Bank v.

First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984)).  General jurisdiction is satisfied when

the defendant's affiliations with the forum state are so "continuous and systematic" as to render

them "at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct.

2846, 2851 (2011).

In Daimler AG v. Bauman, the Supreme Court emphasized that the general jurisdiction

inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense

'continuous and systematic,' [but] whether that corporation's 'affiliations with the State are so

'continuous and systematic' as to render [it] essentially at home in the forum State.'"  134 S.Ct.

746, 761 (2014) (quoting Goodyear, 131 S.Ct. at 2851).  The Supreme Court explained that "only

a limited set of affiliations with a forum will render a defendant amenable to all-purpose

jurisdiction there."  Id. at 760.  For a corporate defendant, "the place of incorporation and principal

place of business are paradig[m] . . . bases for general jurisdiction."  Id. (internal citation and

quotation omitted).

The Daimler Court did recognize the possibility that, in an "exceptional" case, "a

corporation's operations in a forum other than its formal place of incorporation or principal place

of business may be so substantial and of such a nature as to render the corporation at home in that

State."  Id. at 761 n.19.  However, an approach that "approve[s] the exercise of general jurisdiction

in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping." Id. at 761 (internal citation and quotation omitted).

## III. ANALYSIS

In this case, Plaintiffs fail to demonstrate that Defendant's activities in New Jersey are so continuous and systematic as to render it "at home" in this forum.[3] Defendant is a Delaware Corporation with its principal place of business in Massachusetts. Abbott Aff. ¶ 4, Dkt. No. 60. Therefore, neither of the two typical scenarios in which a corporation is "at home" are present here, and the Court must consider whether this is an "exceptional" case in which Defendant's operations are so substantial that they render it "at home" in New Jersey.

As set forth above, Defendant does not maintain any bank accounts in the State and does own any real property in the State, but leases two small office spaces in New Jersey with minimal employees. Id. ¶ 3. Out of 63,000 total employees, only 30 or 31 work in these two New Jersey locations. Id. Furthermore, in the past five years, Defendant has not initiated any legal proceedings in New Jersey. Id.

In support of their argument that the Court may exercise general personal jurisdiction over Defendant, Plaintiffs rely upon: (1) the fact that Defendant has defended itself in another litigation in this forum; (2) Defendant leasing two office locations and employing 30/31 workers in the State; (3) a 1998 news article in which it was reported that Defendant was transferring 1,000 workers from Philadelphia to Princeton; (4) a 2006 news article reporting a two-year $100,000,000 contract

---

[3] Plaintiffs object to Defendant's decision to limit its interrogatory responses to the five-year period prior to this litigation. The Court, in analyzing general jurisdiction, must examine a defendant's contacts over a "reasonable period" of time. Leja v. Schmidt Mfg., Inc., No. 01-5042, 2005 WL 1366533, at *4 (D.N.J. June 7, 2005). Here, the Court concludes five years is a reasonable period of inquiry, id.; see also Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996), and has even considered contacts pre-dating this period for purposes of this motion.

between Defendant and PATH for services to be provided in New York and New Jersey; (5) the fact that one of Defendant's subsidiary's website lists an employee as its "East Coast USA Regional Sales Manager" and his territory includes New Jersey; (6) that two of Defendant's New Jersey employees are listed as "Rapid Response Contacts;" and (7) a current job posting for a position in New Jersey.  See Pl. Opp'n Br. at 6-8.

The foregoing contacts do not come close to evidencing that Defendant is "at home" in New Jersey.  Even if the Court were to assume that the "current" job posting was filed and Defendant thus has 31 employees in this State, these employees would constitute only .0492% of Defendant's workforce.  Furthermore, while Plaintiffs put much weight on the fact that Defendant entered into a $100,000,000 contract with PATH, this two-year contract was entered into eight years before the Complaint was filed, there is no evidence its term was extended.  Plaintiff has also failed to demonstrate the nature of the contacts with the State that arose from the contract.  Furthermore, Defendant's 2005 sales totaled $21,900,000,000, see Pl. Opp'n Br., Ex. L, and its 2013 sales totaled $23,700,000,000.  Def. Reply Br. at 3, n.3.  Thus, this contract does not even evidence a significant portion of Defendant's revenue was generated in New Jersey during this period.

Alternatively, Plaintiffs argue that the Court may exercise general jurisdiction over Defendant because Defendant consented to jurisdiction when it registered to transact business in New Jersey and designated the Corporation Trust Company, located in West Trenton, NJ, as its authorized agent for service of process.  See Pl. Opp'n Br., Ex. I.  This Court disagrees.

In Bane v. Netlink, Inc., the Third Circuit held that a foreign corporation that registered to do business in Pennsylvania had consented to Pennsylvania's exercise of general personal jurisdiction over it.  925 F.2d 637, 641 (3d Cir. 1991).  Central to the court's analysis was its

6

finding that a Pennsylvania statue explicitly empowered courts to exercise general jurisdiction over corporations that registered to do business in Pennsylvania.  Id. (citing 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(i)).

Following Bane, courts within this District analyzed whether business registration alone is sufficient to confer general jurisdiction under New Jersey law.  First, in Sadler v. Hallsmith Sysco Food Servs., the court concluded that notwithstanding New Jersey's lack of an express provision authorizing general jurisdiction over foreign companies that register to do business in the State, business registration in New Jersey nonetheless constituted consent to general jurisdiction.  No. 08-4423, 2009 WL 1096309, at *1 (D.N.J. Apr. 21, 2009).  The Sadler Court based this conclusion on New Jersey's statutory requirement that foreign corporations designate an in-state agent to accept service of process.  Id. at *2.

In Kubin v. Orange Lake Country Club, Inc., however, the court concluded that business registration alone did not constitute consent to general jurisdiction.  The Kubin Court distinguished Bane based upon New Jersey's lack of an explicit statutory authorization for courts to exercise general jurisdiction over foreign corporations registering to do business in the State.  See No. 10-1643, 2010 WL 3981908, at *3 (D.N.J. Oct. 8, 2010).  Instead, jurisdiction could only be exercised over a corporation that registered to do business in New Jersey if it "was actually doing business in New Jersey.'"  Kubin, 2010 WL 3981908, at *3 (quoting Smith v. S&S Dundalk Eng'g Works, Ltd., 139 F. Supp. 2d 610, 620 (D.N.J. 2001)); see also Otsuka, 2015 WL 1305764, at *12 ("Here, the Court finds that [defendants] consented to the Court's jurisdiction by registering to do business in New Jersey, by appointing an in-state agent for service of process in New Jersey, and by actually engaging in a substantial amount of business in this State.").

The Court finds the reasoning of <u>Kubin</u> persuasive.[4]  The single fact that Defendant registered to do business in New Jersey is insufficient to conclude that it "consented" to jurisdiction here.  Defendant has not engaged in a substantial amount of business in the State.  Nor was Defendant served with process in this State.  Thus, the Court concludes it lacks general personal jurisdiction over Defendant.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**.  An appropriate order will follow.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[4] In the briefs, the parties discuss two recent cases addressing jurisdiction by consent: <u>Otsuka Pharmaceutical Co., Ltd. v. Mylan Inc.</u>, No. 14-4508, 2015 WL 1305764, at *12 (D.N.J. Mar. 23, 2015) and <u>Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.</u>, No. 14-3961, 2015 WL 1472123 (D.N.J. Mar. 31, 2015).  These cases, however, applied Federal Circuit precedent, not Third Circuit law.  Additionally, these cases are factually distinguishable.  <u>See</u> <u>Otsuka</u>, 2015 WL 1305764, at *12 ("Here, the Court finds that [defendants] consented to the Court's jurisdiction by registering to do business in New Jersey, by appointing an in-state agent for service of process in New Jersey, and by actually engaging in a substantial amount of business in this State."); <u>Senju</u>, 2015 WL 1472123, at *7 (" . . . the decision to exercise jurisdiction over [defendant] is based upon the fact that [defendant] not only registered to do business in New Jersey but, under New Jersey Court Rule 4:4–4(a)(6), accepted service of process through its registered agent in the state.").