UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES MCCOURT, et al., *Plaintiffs,* v. A.O. SMITH WATER PRODUCTS CO., et al., *Defendants.* | Civil Action No. 14-221 (MCA)<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court by way of six motions for summary judgment filed by the following Defendants: (1) Guard-Line, Inc. ("Guard-Line"), Dkt. No. 186; (2) CertainTeed Corporation ("CertainTeed"), Dkt. No. 188; (3) Union Carbide Corporation ("Union Carbide"), Dkt. No. 189; (4) Exxon Mobil Corporation ("Exxon"), Dkt. No. 191; (5) PSEG Power (improperly pled as Public Service Enterprise Group) ("PSEG"), Dkt. No. 194; and (6) DAP, Inc. ("DAP"), Dkt. No. 207. Plaintiffs did not oppose any of these motions. The Court has decided the motions on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motions are **GRANTED.**

**I.  BACKGROUND**

As set forth above, Plaintiffs have not opposed Defendants' motions nor have they submitted a responsive statement of material facts. As such, the facts set forth in each of Defendants' statements of undisputed facts are uncontroverted.[1] L. Civ. R. 56.1(a). Therefore, the Court accepts the following undisputed facts as true.

---

[1] According to the local rules, in opposing a summary judgment motion, the nonmoving party shall state which material facts are in dispute and support those disputes with appropriate citations to

1

On or about November 26, 2013, Plaintiffs James McCourt ("Mr. McCourt") and his wife, Mabel McCourt ("Mrs. McCourt"), filed a complaint in Superior Court of New Jersey Law Division Middlesex County, New Jersey alleging that James McCourt's exposure to asbestos products caused lung cancer.  Guard-Line's Rule 56.1 Statement of Undisputed Facts ("Guard-Line 56.1 Statement") ¶ 1; CertainTeed's Rule 56.1 Statement of Undisputed Facts ("CertainTeed 56.1 Statement") ¶ 1; Union Carbide's Rule 56.1 Statement of Undisputed Facts ("Union Carbide 56.1 Statement") ¶ 1;  Exxon's Rule 56.1 Statement of Undisputed Facts ("Exxon 56.1 Statement") ¶ 1; PSEG's Rule 56.1 Statement of Undisputed Facts ("PSEG 56.1 Statement") ¶ 1; DAP's Rule 56.1 Statement of Undisputed Facts ("DAP 56.1 Statement") ¶ 1.  On or about January 10, 2014, Defendant Crane Co. removed the case to this Court.  Guard-Line 56.1 Statement ¶ 2; CertainTeed 56.1 Statement ¶ 2; Union Carbide 56.1 Statement ¶ 1 Exxon 56.1 Statement ¶ 2; DAP 56.1 Statement ¶¶ 1-2.  On April 22, 2014, Plaintiffs filed an Amended Complaint.  Dkt. No. 38.  On February 26, 2015, Plaintiffs filed a Second Amended Complaint.  Dkt. No. 113.

Plaintiffs allege that Mr. McCourt was exposed to asbestos while serving in the United States Navy from June 1962 to February 1966, working as a pipefitter from September 1961 to June 1962 and March 1966 to February 1968, performing home renovations over eight years from 1952 to 1960, performing automotive work over nearly forty years from 1959 to 1998, and from work clothing of his father, Charles McCourt, from products that were manufactured, supplied, and/or distributed by several Defendants.  PSEG 56.1 Statement ¶ 1; see also CertainTeed 56.1 Statement ¶ 3; Union Carbide 56.1 Statement ¶ 3; DAP 56.1 Statement ¶ 3.

---

the record.  L. Civ. R. 56.1(a).  "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  Id.

Mr. McCourt was deposed over six days in April 2014. Guard-Line 56.1 Statement ¶ 6; CertainTeed 56.1 Statement ¶ 5; Union Carbide 56.1 Statement ¶ 6; Exxon 56.1 Statement ¶ 5; DAP 56.1 Statement ¶ 4. No other fact witnesses were produced or deposed in this matter. Guard-Line 56.1 Statement ¶ 9; Exxon 56.1 Statement ¶ 12; DAP 56.1 Statement ¶ 16.

The following undisputed facts pertain to each Defendant respectively:

### a. Defendant Guard-Line

During his six days of deposition testimony, Mr. McCourt did not identify Defendant Guard-Line as a source of his asbestos exposure. Guard-Line 56.1 Statement ¶ 8. Plaintiffs did not present any coworker testimony associating Guard-Line with Mr. McCourt's disease. Id. ¶ 9. Plaintiffs' expert report by Arthur L. Frank, M.D., Ph.D., dated July 29, 2015, did not conclude with any reasonable degree of medical certainty that any product manufactured, distributed, or sold by Guard-Line was a substantial factor in Mr. McCourt's disease. Id. ¶¶ 10-11. Plaintiffs did not present any evidence linking Guard-Line with any of Mr. McCourt's claimed asbestos exposure. Id. ¶ 12.

### b. Defendant CertainTeed

In their interrogatory answers, Plaintiffs did not allege that Mr. McCourt was exposed to asbestos from a CertainTeed product or from a product containing any ingredient supplied by CertainTeed. CertainTeed 56.1 Statement ¶ 4. During his six days of deposition testimony, Mr. McCourt did not identify a CertainTeed product or any product that may potentially have contained an ingredient supplied by CertainTeed. Id. ¶ 5. Plaintiffs did not provide any evidence demonstrating an injury to Mr. McCourt as a result of his exposure to any alleged asbestos containing product designed, manufactured, sold, or supplied by CertainTeed. Id. ¶ 6.

### c. Defendant Union Carbide

Plaintiffs allege that Mr. McCourt was exposed to asbestos-containing products manufactured, distributed, and/or sold by numerous defendants, including Union Carbide. Union Carbide 56.1 Statement ¶ 2. Plaintiffs named Union Carbide as an additional defendant in their answers to standard interrogatories. Id. ¶ 5. Plaintiffs did not, however, allege that Mr. McCourt was exposed to asbestos from a specific product or from a product containing any ingredient or phenolic molding compound supplied by Union Carbide. Id. ¶ 4. Moreover, during his six days of deposition testimony, Mr. McCourt did not identify a Union Carbide product or any product that may potentially have contained Union Carbide fiber during the time period that Union Carbide sold and supplied fiber. Id. ¶ 6. Plaintiffs have not provided any evidence demonstrating an injury to Mr. McCourt as a result of his exposure to any alleged asbestos containing product designed, manufactured, sold, and/or supplied by Union Carbide. Id. ¶ 7.

### d. Defendant Exxon

Plaintiffs did not identify Exxon as a source of Mr. McCourt's exposure to asbestos in their interrogatory responses. Exxon 56.1 Statement ¶ 4. During his six days of deposition testimony, Mr. McCourt did not identify Exxon as a source of his asbestos exposure. Id. ¶ 6. Mr. McCourt testified that he helped his father perform renovations on his family home in the early 1950s when he was approximately eleven years old. ¶ 6. Mr. McCourt testified that he helped his father perform renovations on his family home in the early 1950s when he was approximately eleven years old, which included installing new windows. Id. ¶ 7. During the windows installation, his father used a product Mr. McCourt identified as "dum dum" to caulk around the windows. Id. Mr. McCourt testified that his father applied the "dum dum" with a putty knife or finger and would wipe the excess product with a rag. Id. Mr. McCourt was not involved in the application of the

4

"dum dum" to the new windows but he did help in removing the "dum dum" and reapplying it when these windows had to be resealed as part of maintenance work. Id. He did not know the manufacturer of the "dum dum" product used on these windows. Id. No one told Mr. McCourt that the "dum dum" product contained asbestos but he alleged that believed it did based on general knowledge that "a lot of sealants and caulks and all that had asbestos in it." Id.

According to Michael J. Masciale, former technical director for Mobil Chemical Company's Maintenance, Marine and Steel Containers Coatings Division ("Mr. Masciale"), "dum dum" is not a proprietary brand name, and there were other manufacturers of "dum dum" products. Id. ¶¶ 13-14. Mr. Masciale explained that in July 1963 Mobil Finishes Company, Inc., a predecessor of Mobil Chemical Corporation, acquired the assets and businesses of certain paint and coatings divisions of Martin Marietta Corporation including Mobil "dum dum" product line. Id. ¶ 13. Mr. Masciale explained that several companies manufactured products in which the world "dum dum" was part of the name, including, the Presco Co., Ltd, Eldro (manufactured by A.R. Davies), Valspar, and Ameron International and Rubber-Seal Products Co. Id. ¶ 14. In addition, he explained that the name "dum dum" has been used by workers for many years generally to describe a variety of products including mastics, putties, and caulks that were not manufactured by Exxon. Id.

e. **Defendant PSEG**

Plaintiffs allege Mr. McCourt was employed directly by PSEG as a serviceman at various residential and commercial sites in Essex County and Hudson County from a period of approximately ten months from September 1961 through June 1962, and then again after his service in the United States Navy for a period of approximately twenty-three months from March 1966 through February 1968. PSEG 56.1 Statement ¶ 2. Plaintiffs, however, have not asserted

5

any claims against PSEG with respect to Mr. McCourt's own work as an employee of PSEG. Id. ¶ 4. Plaintiffs' alleged claims with respect to PSEG are limited to the work of Mr. McCourt's father, Charles McCourt, as a serviceman for PSEG out of a facility in Newark. Id. ¶ 13. Mr. McCourt testified that he believed his father started working for PSEG around 1954 or 1955 when Mr. McCourt was about twelve. Id. ¶ 14. Mr. McCourt testified that he lived at his parents' residence until June 1962 when he was nearly twenty years old. Id. ¶ 15. Mr. McCourt responded affirmatively when asked if he believed his father was exposed to asbestos when working at PSEG. Id. ¶ 16. Mr. McCourt's belief was not based on documents or other evidence but mere on his "understanding." Id. ¶ 17. Mr. McCourt later testified that he never visited his father at PSEG's Newark location or at any of his worksites prior to beginning his own employment with PSEG. Id. ¶ 18. He also testified that he never worked on any jobs with his father from September 1961 through June 1962. Id. Mr. McCourt testified that he did not know for certain whether any of the dust or dirt that may have been on his father's uniform actually contained asbestos or that he was actually exposed to friable asbestos from his father's clothing. Id. ¶ 20. Mr. McCourt further testified that he had no personal knowledge as to the source of any dust or dirt that may have been on his father's clothing when he came home from work at PSEG. Id. ¶ 21. Plaintiff did not produce any documents or evidence establishing that from 1954 to 1962, his father worked with or around asbestos-containing materials during his work for PSEG, that his father was actually exposed to friable asbestos during his work for PSEG, that his father brought friable asbestos home on his work clothing, or that Mr. McCourt was exposed to any friable asbestos allegedly brought home on his father's clothing. Id. ¶ 22.

Plaintiff testified that when his father came home from work, if he was wearing his work clothes, he would change his clothes quickly. Id. ¶ 23. Mr. McCourt testified that his only

interaction with his father's work clothes was on the occasions his father gave him a hug after work until the time he was sixteen or seventeen years old. Id. ¶ 24. Mr. McCourt testified that he did not hug his father every day, and that he was not always home when his father got home from work. Id. ¶¶ 25-27. On occasion, his father did not wear a uniform. Id. ¶ 24. Mr. McCourt also testified that his father did not always come home with dust on his clothing. Id. ¶ 28. Mr. McCourt only had a specific recollection of giving his father a hug, which lasted one to two seconds, while his father was wearing a PSEG uniform that was dirty or had dust on it on "several occasions" between 1954 and 1959. Id. ¶¶ 29-30. Mr. McCourt had no recollection of dust coming off his father's clothing. Id. ¶ 31. Mr. McCourt also testified that he and his brothers assisted their mother with the family's laundry, which included their father's work clothes. Id. ¶¶ 24, 32. Mr. McCourt also testified that PSEG provided his father with a uniform, locker, changing facilities, laundering services, and access to a shower. Id. ¶ 35. He recalled PSEG providing its employees with three uniforms and laundry bag to put the work clothes in, as well as a laundry service for the uniforms. Id. ¶ 36. Finally, Mr. McCourt testified that on the occasion his father wore a uniform, which was about fifty percent of the time, PSEG would launder it afterward. Id. ¶ 39.

### f. Defendant DAP

Mr. McCourt alleges that his exposure to DAP's products is limited to sporadic home improvement projects he worked on with his father between 1950 and 1962 and two home improvement projects he performed on his own from 1982 to the mid-1980s. DAP 56.1 Statement ¶ 5. Mr. McCourt testified that the only DAP product he was exposed to was a "joint compound" product. Id. ¶ 7. He testified that he used DAP's "joint compound" products on the seams of sheetrock/wallboards. Id. ¶ 8. Mr. McCourt testified that he did not know whether the DAP products he and his father used contained asbestos. Id. ¶ 9. In Plaintiffs' interrogatory responses,

7

they identify DAP's products under the category "joint compound/caulk, etc," but specifies "(caulk)" next to the DAP identification. Id. ¶ 10. Mr. McCourt clarified his apparent confusion between his interrogatory responses and deposition testimony by expressly stating that the DAP products he used on the seams of wallboard were "joint compound," not "caulk or putty." Id. ¶ 11. He further testified that the "caulk" he and his father used were manufactured by an entity known as "Dum-Dum" not by DAP. Id. ¶ 12. DAP provided an Affidavit from a corporate representative, Ward Treat, the Senior Chemist, Assistant Quality Control Manager and Technical Support Specialist for DAP from 1973 to 1990, who was fully familiar with DAP's historical line of products. Id. ¶ 13. Mr. Treat confirms that "prior to 1978, DAP did not manufacture a joint compound." Id. ¶ 14. He also states that "prior to and after 1978, DAP manufactured spackle, which was a premixed compound," and that "DAP spackle never contained asbestos as any time." Id. ¶ 15.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 249).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come

forward with specific facts showing that there is a genuine issue for trial." Id. (internal quotation omitted). Finally, all evidence shall be construed, and all reasonable inferences drawn, in the light most favorable to the nonmoving party. Id.

Even when the motion is unopposed, as it is here, the Court must still determine whether the motion for summary judgment is appropriate. See Fed. R. Civ. P. 56(e). The Court must review the unopposed record to determine if the defendant is entitled to judgment as a matter of law, notwithstanding the plaintiff's silence. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).

### III. ANALYSIS

In New Jersey, "to prevail against a particular defendant in an asbestos case, a plaintiff must establish, in addition to other elements of a product liability action, exposure to friable asbestos manufactured or distributed by the defendant." Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 30 (App. Div. 1989). Furthermore, "to defeat summary judgment, plaintiff must adduce evidence such that 'reasonable jurors could infer that sometime during [plaintiff's] work histor[y] . . . plaintiff [was] exposed to a defendant's friable asbestos frequently and on a regular basis, while [plaintiff was] in close proximity to it[,]' as well as 'competent evidence, usually supplied by expert proof, establish[ing] a nexus between the exposure and plaintiff's condition.'" Thomasson v. Air & Liquid Sys. Corp., No. 13-1034, 2015 WL 1639730, at * 3 (D.N.J. Apr. 9, 2015) (quoting Sholtis, 238 N.J. Super. at 31). Under this test, plaintiff cannot rest on evidence which merely demonstrates that a defendant's asbestos product was present in the workplace or that he had "casual or minimal exposure" to it. Goss v. American Cyanamid Co., 278 N.J. Super. 227, 236 (N.J. Super. Ct. App. Div. 1994).

9

Defendants are entitled to summary judgment because Plaintiffs have failed to show there is any genuine issue of material fact bearing on each Defendants' liability. Plaintiffs have not produced any evidence through documentation or deposition testimony that identifies Guard-Line, CertainTeed, Union Carbide, Exxon, PSEG, or DAP as a source of Mr. McCourt's asbestos exposure. Plaintiffs have thus failed to demonstrate that Defendants manufactured, supplied, or distributed the asbestos-containing products which Mr. McCourt was exposed to on a frequent and regular basis while in a close proximity to it. Accordingly, Plaintiffs cannot establish a prima facie case that any of the Defendants caused or contributed to Mr. McCourt's illness, and Defendants Guard-Line, CertainTeed, Union Carbide, Exxon, PSEG[2], and DAP are entitled to summary judgment as a matter of law.

## VI. CONCLUSION

For the foregoing reasons, Defendants Guard-Line, CertainTeed, Union Carbide, Exxon, PSEG, and DAP's motions for summary judgment are **GRANTED.** An appropriate order accompanies this opinion.

**Dated: April 8, 2016**

                                                **/s Madeline Cox Arleo**
                                                **HON. MADELINE COX ARLEO**
                                                **UNITED STATES DISTRICT JUDGE**

---

[2] The Court also finds that Plaintiffs have failed to establish that PSEG, as employer to Mr. McCourt's father, owed a duty or breached any duty it may have owed to Mr. McCourt based upon alleged asbestos exposure from his father's work clothing during his father's work at PSEG. This provides an additional basis for summary judgment in favor of PSEG.